No. 95–1826. THOMAS ET UX. v. AMERICAN HOME PRODUCTS, INC., ET AL. C. A. 11th Cir. Certiorari granted, judgment vacated, and case remanded for further consideration in light of *Banks* v. *ICI Americas, Inc.*, 266 Ga. 607, 469 S. E. 2d 171 (1996).

JUSTICE SCALIA, concurring.

Since I have been critical of the Court's excessive use of the GVR mechanism, I think it appropriate to explain why I think it proper to GVR here.

As I described in *Lawrence* v. *Chater*, 516 U. S. 163, 177 (1996) (SCALIA, J., dissenting), our practice of *granting* certiorari, *vacating* the judgment below, and *remanding* for further proceedings in light of intervening developments apparently began when we first set aside the judgments of state supreme courts to allow those courts to consider the impact of state statutes enacted after their judgments had been entered. *E. g., Missouri ex rel. Wabash R. Co.* v. *Public Serv. Comm'n*, 273 U. S. 126 (1927). By 1945, the practice of vacating state judgments in light of supervening events had become so commonplace that we could describe it as "[a] customary procedure." *State Farm Mut. Automobile Ins. Co.* v. *Duel*, 324 U. S. 154, 161. "Similarly, where a federal court of appeals' decision on a point of state law had been cast in doubt by an intervening state supreme court decision, it became

our practice to vacate and remand so that the question could be decided by judges 'familiar with the intricacies and trends of local law and practice.'" *Lawrence, supra,* at 180 (SCALIA, J., dissenting) (quoting *Huddleston* v. *Dwyer,* 322 U. S. 232, 237 (1944)). See also *Conner* v. *Simler,* 367 U. S. 486 (1961); cf. *Omaha Nat. Bank* v. *Nebraskans for Independent Banking, Inc.,* 426 U. S. 310 (1976) (GVR'ing in light of an intervening state statute).

Thus, the present case falls squarely within our historical use of the GVR mechanism. The Supreme Court of Georgia's decision in *Banks* v. *ICI Americas, Inc.,* 266 Ga. 607, 609–610, 469 S. E. 2d 171, 174 (1996) *(Banks II),* handed down after the Court of Appeals for the Eleventh Circuit's decision, makes clear that the Eleventh Circuit's interpretation of Georgia law was incorrect. The sequence of events was as follows: After the Court of Appeals had issued its *per curiam* opinion affirming the District Court's entry of summary judgment against petitioners, the Georgia Supreme Court, in *Banks* v. *I. C. I.,* 264 Ga. 732, 450 S. E. 2d 671 (1994) *(Banks I),* in effect overruled the Georgia case that was the basis for the District Court's holding. Petitioners' petition to the Eleventh Circuit for rehearing was denied, the only explanation given being that "the holding of the Georgia Supreme Court in *[Banks I]* would not apply to the injuries involved in this case" because that holding had no retroactive application. *Thomas* v. *American Home Products, Inc.,* No. 93–9214 (CA11 1996), App. to Pet. for Cert. 28a. Shortly before the present petition for writ of certiorari was filed, the Supreme Court of Georgia held in *Banks II* that *Banks I was* retroactive.

THE CHIEF JUSTICE points out that "[p]etitioners' request for relief meets none of the tests set forth in this Court's Rule 10, 'Considerations Governing Review on Certiorari.'" *Post,* at 916. That is certainly so. Of course as this Court's Rule 10 itself makes plain, those tests "neither control[l] nor fully measur[e] the Court's discretion," but rather merely "indicate the character of the reasons the Court considers" in deciding whether to grant certiorari. More importantly, however, we have never regarded Rule 10, which indicates the general character of reasons for which we will grant *plenary consideration,* as applicable to our practice of GVR'ing. See, *e. g., Lawrence* v. *Chater, supra,* at 166–167. Indeed, *most* of the cases in which we exercise our power to GVR plainly do not meet the "tests" set forth in Rule

10. See, *e. g., Schmidt* v. *Espy,* 513 U. S. 801 (1994) (GVR in light of administrative reinterpretations of federal statutes); *Crouse* v. *United States, ante,* p. 801 (GVR in light of *Koon* v. *United States,* 518 U. S. 81 (1996)); *Greater N. O. Broadcasting* v. *United States, ante,* p. 801 (GVR in light of *44 Liquormart, Inc.* v. *Rhode Island,* 517 U. S. 484 (1996)).

We are not remanding this state-law case, as THE CHIEF JUS-TICE suggests, because the Eleventh Circuit failed to prophesy the course that the Supreme Court of Georgia would ultimately take, see *post,* at 917, any more than we remand *federal-law* cases in light of intervening decisions of *this* Court because the court of appeals failed adequately to predict how *we* would decide. In both instances, we are vacating the decision below to allow the Court of Appeals to consider an intervening decision of the Court that is the final expositor of a particular body of law—with federal questions, the Supreme Court of the United States, and with questions of Georgia law, the Supreme Court of Georgia. We assuredly would not decline to GVR a case affected by one of our own intervening decisions merely because the case "is of no general importance beyond the interest of the parties." *Post,* at 917. Almost all of our GVR's fit this description—for example, the many cases GVR'd in recent months in light of our decision in *Bailey* v. *United States,* 516 U. S. 137 (1995), *e. g., Cuellar* v. *United States,* 518 U. S. 1014 (1996). I can think of no possible reason why we would routinely GVR "unimportant" cases in light of our own opinions but not in light of state supreme court opinions, unless, of course, we have less regard for the federal courts' correct application of state law than for their correct application of federal law—an attitude we should certainly not acknowledge.

I do not share THE CHIEF JUSTICE's fear that our action today will flood the Court with applications to review questions of state law by petitioners "unhappy" with the result below. *Post,* at 917. As I have described, today's action breaks no new ground but merely continues a longstanding practice. It does not involve us in an intensive review of state law, but requires only the simple determination (rarely available) that the federal-court decision on state law appears to contradict a *subsequent* decision of the state supreme court. When the conflict is of "far more dubious . . . relevance" than the one at issue here, *ibid.,* we can and should exercise our discretion to deny the petition for writ of certiorari.

CHIEF JUSTICE REHNQUIST, with whom JUSTICE BREYER joins, dissenting.

This is a personal-injury, products-liability case which is in the federal court system by virtue of diversity of citizenship. The Court of Appeals for the Eleventh Circuit affirmed a grant of summary judgment against petitioners by the District Court, and petitioners have sought review here. In a supplemental brief filed after their petition, they have called attention to the decision of the Supreme Court of Georgia, *Banks* v. *ICI Americas, Inc.,* 266 Ga. 607, 609–610, 469 S. E. 2d 171, 174 (1996), handed down on April 29, 1996, 2½ months after the Court of Appeals denied rehearing.

Petitioners' request for relief meets none of the tests set forth in this Court's Rule 10, "Considerations Governing Review on Certiorari." The first of these considerations, as outlined in the Rule, is if a court of appeals has rendered a decision in conflict with the decision of another United States court of appeals, or has decided a federal question in a way which conflicts with the decision of a state court of last resort, or "has so far departed from the accepted and usual course of judicial proceedings . . . as to call for an exercise of this Court's supervisory power." There is clearly no conflict between courts of appeals in this case, nor do petitioners claim that the Court of Appeals for the Eleventh Circuit has decided a federal question in a way which conflicts with a state court of last resort. Nor could it be claimed that the Court of Appeals departed from the accepted and usual course of judicial proceedings, since the decision of the Supreme Court of Georgia in *Banks* was handed down more than two months after the Court of Appeals denied rehearing.

The other considerations governing review of certiorari likewise have no application to this case. The Court of Appeals here has not decided an important question of federal law which should be settled by this Court, or decided a federal question in a way that conflicts with applicable decisions of this Court.

Thus, one must ask, why is this Court intervening to vacate and remand this case to the Court of Appeals? The Court's answer, I suspect, would be that *Banks* suggests that the Court of Appeals may have wrongly decided an issue of Georgia law in the case. But this Court's function, generally speaking, is not to correct federal courts' misapplications of state law, except, perhaps, in exceptional cases with importance beyond the parties' particular

dispute. This is not such an exceptional case; there is no reason to think that the Eleventh Circuit will not apply *Banks* faithfully in future cases. Nor is this a case which we must, for one reason or another, decide on the merits and where the views of another court as to the intervening state-law decision might be useful, or a case where certiorari has already been granted and the case argued on the merits. See *Lawrence* v. *Chater*, 516 U.S. 163, 176 (1996) (REHNQUIST, C. J., concurring in No. 94–9323 and dissenting in No. 94–8988) (citing and distinguishing cases).

To be sure, there is a "special deference owed to state law and state courts in our system of federalism," *id.*, at 179 (SCALIA, J., dissenting), but by failing to predict the Georgia Supreme Court's *Banks* decision the Eleventh Circuit has in no way slighted the State of Georgia or upset the balance of our federalism. I do not believe that this Court has a stake in the correctness of discrete state-law decisions by federal courts, nor, in such cases, any " 'obligat[ion] to weigh justice among contesting parties.' " *Lawrence, supra*, at 177 (REHNQUIST, C. J., concurring in No. 94–9323 and dissenting in No. 94–8988) (quoting 2 H. Pringle, The Life and Times of William Howard Taft 997–998 (1939)).

I trust I am correct in thinking that the Court would not grant certiorari in this case to decide whether or not the decision of the Supreme Court of Georgia in *Banks* requires a different outcome than that reached below. I am equally sanguine that the Court would not summarily reverse the decision of the Court of Appeals on a question of Georgia law, a subject about which that court knows a great deal more than we do. Because we are only granting, vacating, and remanding to the Court of Appeals, the Court's action may seem more palatable here. But I believe it is just as incorrect as would be our deciding the merits of a question of state law in some other diversity case which is of no general importance beyond the interest of the parties. The decision to vacate and remand in this case doubtless seems an easy one to those who join it; the Court of Appeals specifically mentioned the retroactivity issue later decided in *Banks* in its opinion denying rehearing, and respondents have filed no response to petitioners' supplemental brief. But today's action will encourage numerous similar requests from other parties unhappy with the decision of a court of appeals in their diversity cases, and the relevance of the intervening factors which they urge may be far more dubious than is the relevance of *Banks* to this case.

Finally, requiring the Court of Appeals to delve into the facts and law of the case again, months after it denied rehearing, is not without cost. The typical active judge of the Court of Appeals for the Eleventh Circuit participates in somewhere between 150 and 200 panel decisions each year. For us to require a busy court to once more revisit the merits of this state-law dispute gives these petitioners more of the time and resources of the federal judicial system than they deserve.

I dissent from the Court's disposition of this case.